The fourth district appellate court of the state of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good afternoon, Council. This is case number 4-22-0280. People v. Anthony Perez. Council for the appellant, would you state your name for the record? Sure. Good afternoon. My name is Ian Barney and I represent the appellant, Mr. Anthony Perez. All right. And Council for the appellee? Luke McNeil. All right. Thank you. Mr. Barney, you may proceed. Thank you, Your Honor. May it please the court. As I said, my name is Ian Barney and I, along with my co-counsel, Madison Heckle, represent the appellant in this case, Mr. Anthony Perez. Mr. Perez was convicted of first-degree murder, among other offenses, and sentenced to an aggregate term of imprisonment of 95 years. This is an appeal of the second-stage dismissal of his first post-conviction petition. This case is really about unreasonable assistance of post-conviction counsel. Representation in post-conviction proceedings that were so deficient in Mr. Perez's post-conviction claims, nearly all of them were dismissed as a result of post-conviction counsel's errors. Excuse me, counsel. Good afternoon. I know I'm interrupting right at the beginning here, but I do have a number of questions. And when you started talking about reasonable assistance of counsel, there is one issue with regard to that that I'd like to start with. And that is to talk about Rule 651C, the Suarez case and the Johnson case, and its applicability. You concede, or you indicate in your brief, page 16, that this rule applies to both appointed and retained counsel at the second and the third stages of post-conviction proceedings. But per the Cotto case, the Illinois Supreme Court case, not to counsel that was privately retained at the first stage. Now, Johnson did not change that, indeed, did not opine with respect to 651C, correct? Correct. All right. Now, in Johnson, the issue that we see was whether privately retained counsel at the first stage is held to the same reasonable standard of representation as appointed attorneys at the second stage, correct? Yes, correct. All right. And the court held, the Johnson court held, that they were, but did not opine on the test to be used to evaluate that standard. Are you with me so far? I'm with you. That's exactly right. All right. So what the Zareski case did, as I see it, which I agree is pre-Johnson, is that case opined on the test and gave us the Strickland-like analysis that we were to use. And, of course, you do indicate in your brief that Zareski was cited with approval in this fourth district in the Schoolcraft case authored by Justice Harris in 2022, the Compton case on which Justice Steigman was on the panel. And there is a new case, a newer case, People v. Beverly, 2022, Illinois Appellate, 4th, 210-677-U, Rule 23, that was authored by Justice Harris in December of 2022, in which Zareski was cited with approval. Now, as I read your argument, your concern is that these cases in the fourth district, authored by the justices and participated in by the justices I named, do not discuss the effect of Johnson. And specifically, the sentence or the part of Johnson in which the court said that in rendering its decision, it's important to put all post-conviction petitioners on an equal footing. And your question is, does this mean that they get the additional protections of 651C and the holding is Suarez? Now, is not the answer to that question clear if we look at CATO, the Supreme Court case 2016, Illinois 119-006, paragraph 41? And the answer is specifically given by that court, and it tells us that 651C applies to counsel appointed or retained after a pro se petition, a pro se petitioner files a post-conviction petition. So you question whether Zareski is still good law. How could it not still be good law until the Supreme Court tells us something different than in CATO? For two reasons, Your Honor. First, CATO speaks to the application of Rule 651 specifically. It doesn't, I suppose what I'm getting at is I'm not asking this court to specifically extend Rule 651 to the first stage of proceedings. What I am, what Mr. Perez is, sorry, what his position is, is that the analysis, the Zareski analysis is simply not the correct analysis. A Strickland-like test is too high of a burden for a petitioner proving unreasonable assistance of counsel. What Mr. Perez is not asking is for 651 to explicitly be extended to apply to first stage petitioners who retain counsel. However, an analysis that is similar to the analysis that is done when analyzing the 651 rule violation should apply. So what authority are you using to base that on? So if it's not Zareski and it's not 651C in an automatic remand, where do we get this new and different analysis? Well, it comes from the 651C automatic remand. And so far as here, Mr. Perez needs to prove deficient performance and remand is automatic. But remand is not automatic under 651 because 651 doesn't apply to, we know that, 651 doesn't apply to petitioners who retain counsel at the first stage. But I don't believe that that means necessarily that the standard applied for unreasonable assistance at the first stage must be a Strickland-like analysis. I don't believe the two are having a similar analysis. 651 is excluded just because 651 itself doesn't apply to first stage petitioners who retain counsel. My second. I guess I'm still, so I haven't heard, or maybe I missed and I apologize if I did. What analysis are you suggesting we use or any appellate court use if it's not a Strickland-like analysis and it's not 651C automatic remand? Well, I suppose I could steal someone from Jouresky and say it's a 651C-like analysis. The question is, was there deficient performance by counsel? If there was, did that result in the loss of claims by petitioner? And if the answer to those questions is yes, then the petitioner's petition should be remanded to the second stage. And what you will hear was dismissed at the second stage. In this case, remanded to the second stage where new counsel can come on and address the infirmities that were left unaddressed by retained counsel in the first proceedings. So then you're saying we don't look at the merits of any of the claims or the issue of prejudice? Correct. I suppose the court could look to the question of prejudice in the context of, did the petitioner suffer some type of adverse effect on his claims because of counsel's errors? In this case, the answer would be yes, because Mr. Perez's claims were lost specifically because of post-conviction counsel's error. So in that sense, that's prejudice. You need to have lost claims as a result of a deficient performance. But in terms of analyzing each and every claim and deciding, do any of these claims have merit, that analysis would not need to be done under the framework that's being proposed by Mr. Perez. So would not this approach result in useless remands to the trial court for claims that had no merit? Wouldn't this be a useless way to, an inefficient way to do this? No. The answer is no. And the reason why I say no is because once the petition is remanded, new counsel can come on the case whether appointed or retained. And if there, perhaps there were claims that were left out of the petition, which was the case in Johnson, I believe. Perhaps there are additional claims that are not in the petition that were not included because of deficient performance. Or perhaps a claim needs to be developed. For example, in this case, there was a Brady claim that the trial court in fact thought did have merit that was at least implied in the petition. But trial counsel never bothered, or excuse me, post-conviction counsel never bothered to take the steps to develop that claim. Even when explicitly given the opportunity by the trial court, do you want to amend this petition? Do you want to supplement it? No, I'm going to stand on this petition. And when he made that decision, he was with his client and he indicated, I believe to the court, did he not, that he had conferred with the defendant about this and that the defendant would stand on the original petition. So rather than this showing unreasonable assistance, doesn't it instead show that counsel and the defendant collectively decided not to pursue this potential Brady claim? I would hesitate to put the onus on Mr. Press, who's in the Illinois Department of Corrections, obviously serving a lengthy sentence, to undertake the investigation into these claims. And the reason why I say that is, one, he doesn't have the means, he's in the Illinois Department of Corrections, but two, that's why he's hired counsel. And in fact, with respect to this Brady claim in particular, counsel specifically made the representation during arguments on the motion to dismiss that he had spoken with this witness who had given him the information about the Brady claim, that he wanted to call, it appears this witness and maybe other witnesses, at an evidentiary hearing to prove the claim. That's just not how the post-conviction process works, as this court well knows. You don't get a hearing until you've presented affidavits to support your claim. So that's just one instance, I think, where remand would not be feasible. In addition, Your Honor, obviously Cotto predates, this goes back to Your Honor's original question, Cotto predates Johnson. And I think if you read Cotto and Johnson together, this is where I get this, I wouldn't say get this, but this is where we've developed this position that remand should be automatic. Both cases are attempting to give petitioners additional protections so that their claims can be heard on the merits. They're not just procedurally defaulted and these petitioners never have the opportunity to have their claims heard. And the Johnson statement that it wants to put petitioners on equal footing is really applicable here. Because if you apply the Zareski framework, what you have is two different scenarios that could play out. And the only distinction between them really be that a petitioner retained counsel first stage versus a petitioner who retained counsel at a second stage or potentially had counsel appointed. And I'd like to just walk through a hypothetical for you and compare it to this case. In this case, Mr. Perez retained counsel for his post-conviction petition. Counsel for the post-conviction petition was in fact his appellate counsel as well. So Mr. Perez is diligently pursuing his rights here. You have a petition that is filed one day late. And we know from the record, the reason it's filed one day late is because post-conviction counsel erroneously interpreted the post-conviction hearing act to read the deadline for a post-conviction petition. In this case, it would be nine months from when Mr. Perez's PLA was denied. In fact, the deadline is 90 days plus six months, which is very close to nine months, but not quite. And in this case, it was one day off causing the loss of claims. What counsel should have done at the second stage was amend or supplement the petition to allege that the tardiness was not due to Mr. Perez's own culpable negligence. And this is where the Supreme Court's decision in People v. Risley comes in. In Risley, a 2003 case, the petitioner filed late based on his appellate counsel's advice regarding the filing deadline. The petitioner was also assisted in filing the petition by the appellate defender's office who represented the petitioner on appeal. And he filed the petition late. The Illinois Supreme Court said he's not culpably negligent in the tardy filing. And the reason is because the petitioner was entitled to rely on the advice of his counsel. And so the petition was allowed to advance. So if you take Risley and you take this case, we have this hypothetical that I'll create. If Mr. Perez had filed this very same petition, the exact same petition, on the advice of his appellate counsel, who happened in real life to also represent him on the PC, filed it late because of bad advice on the deadline, and then retained the exact same counsel at the second stage, then 651C kicks in, counsel doesn't amend the petition, doesn't supplement it, makes no allegations regarding culpable negligence, the petition is dismissed, then this court is sending it back, an automatic remand, because in the hypothetical, counsel would have violated Rule 651C, and he would have been failing in his duties to amend or supplement the petition to avoid procedural bars. He would have violated 651C, and remand would have been automatic. The only material difference between what happened in this case and what happened in that hypothetical is that Mr. Perez retained private counsel at the first stage here, whereas in the hypothetical, he retained the exact same private counsel at the second stage. And so that's the type of... I'm sorry, Your Honor, I don't want to interrupt you. I just coughed. Sorry if I interrupted you. No, no, no. That is the type of disparity, I think, that the Johnson court was looking to avoid when it said it wanted to place all petitioners on equal plea. I have a question, Justice... Go ahead, Justice Steigman. Okay, thank you. I want to ask about your claim regarding the testimony of Special Agent Raschke. He testified at length at the trial, and the trial court found him qualified to testify as an expert with regard to the business of determining where the cell site analysis, where the phones were, and all that. And as I recall, there was an objection made to that, and the trial court determined he was qualified to testify as an expert, let him testify, and that matter was litigated on direct appeal, and the second district rejected the argument that he wasn't qualified. In the post-conviction petition, you attach the, I guess, affidavit it is of Manfred Schenk, a computer scientist, who says he believes Raschke reached an erroneous conclusion, and you ask us to consider that, and your argument, if I understand correctly, is that the defendant's due process rights were violated because Raschke's testimony lacked foundation, is that correct? That's correct, Your Honor. How does an evidentiary ruling, after the trial court made a determination he was an expert, a proposed expert, and was qualified to testify, how does that court's ruling amount to a violation of due process, simply because at this stage, you have another expert, let's assume he is an expert, who disagrees? Your Honor, if I could just clarify one thing before answering. Sure. First, with respect to the due process allegation, the court can put the Manfred Schenk affidavit to the side. I'm not relying on that in this appeal, and it really doesn't, I don't believe, play into... But you're still arguing that the testimony of Raschke constitutes a due process violation? Yes, Your Honor. How does that work, counsel, when you've had the trial court address this evidentiary issue, finding it to be permissible, and the appellate court has said that was a correct ruling? How can you construct a due process violation based on that record? Well, Your Honor, I think there is case law that a due process violation can emanate from an evidentiary ruling, if the ruling is, the error is so fundamental as it impacts the integrity of the process, and I think that's what happened. And the appellate court rejected this argument, finding that the trial court didn't abuse its discretion for letting him testify. We still have a claim that was so fundamental that it amounts to a denial of due process. Is there any precedent for such an argument? I believe there is, Judge. In People v. Stafford, the court automatically reversed the case without respect to prejudice because of the fundamental nature of the error there. There was, excuse me, there was, I think, a handprint expert or a fingerprint expert who testified regarding matching defendant's handprint to a handprint that was found on a vehicle. There was absolutely no foundation for how the comparison was made. People v. Fines. Had that case gone before an appellate court and found the testimony to be admissible and appropriate? Judge, I think those are both direct appeal opinions, so I believe the answer to your question is no. Well, that's what I'm saying. This strikes me as really peculiar, where we have the appellate court affirming this testimony, saying that it was appropriate, but now you're arguing that it's a denial of due process for this witness to have self-testified. I don't understand how you can do that. Judge, looking at the record, that's the issue that was brought up in the post-conviction petition by post-conviction counsel. Looking at the record, Judge O'Connor, I see that my time has ended. May I complete my answer to your question? You may answer the question. Thank you. Looking at the record here, there was no foundation for Special Agent Braschke's opinion with respect to the data points that he was relying on for SPRINT. When I say no foundation, I mean there was no information that the data that was captured by SPRINT was reliable. There's no information that the computer systems used to generate that information were working properly at the time. There's no information that the algorithm used by SPRINT was, in fact, a reliable algorithm, and all of that's the case because that's all proprietary information. The location data used by Special Agent Braschke in this case, there was no foundation to it. That's why I likened it to the polygraph examination. You get all these results, but you don't know if the data that's relied on for the results is reliable. That's the People v. Fines case that I mentioned. I understand Your Honor's question. I think the best way I can answer it is that that was a claim raised by post-conviction counsel. Looking at the record, it's Mr. Perez's position that the admission of that testimony was an error so fundamental that it violated his right to process. Thank you, Your Honors. I believe I have five minutes for rebuttal, so I'd be happy to answer any questions. Thank you. All right. Thank you, Mr. Barney. Yes, you'll have time in rebuttal. Mr. McNeil. May it please the court, counsel. To answer Justice Zinoff's question, yes, CADO is clearly still good law. We know that it was pre-Johnson, but this court has had multiple decisions, although unpublished in 2022, affirming or reaffirming or confirming that CADO is still good law. And that disposes of defendant's unreasonable assistance argument because defendant did not file a pro se petition. As for defendant's position for basically arguing that meritless arguments must be remanded, it's well settled. The unreasonable assistance is a lesser standard than Strickland. It's a higher hurdle to cross than that of the Strickland burden. This seems like it would be a lower hurdle because you don't have to show that deficient performance affected the outcome of the proceedings in any way. So I would say that that goes against Strickland as well as post-conviction authority. And as for the tardiness of the petition, we don't know that the tardiness was not due to defendant's culpable negligence. There's no good reason at all as to why the petition was filed on that late date. And quite simply, there was no unreasonable assistance argument for the trial court to analyze. All the trial court knew was that this was late and it's conceded by defendant that this petition wasn't timely. That means the trial court would have had to sua sponte find unreasonable assistance without knowing any of the circumstances as to why this petition was filed late. And sort of consistent with Justice Steigman's Veatch opinion, if defendant wants to argue unreasonable assistance of post-conviction counsel, the more appropriate way to go about it is in a successive post-conviction petition. So the record can have some sort of indication as to the circumstances of not only the late filing, but also the circumstances of not further supplementing the Brady violation claim at the second stage. We don't know why counsel, for all we know, counsel pursued that claim and Pena and Brooks were not cooperating whatsoever. Or we find out that these messages, which were, even if they are true, are multiple levels of hearsay, but I would submit that it's pretty common knowledge at this point. It does not take any technical certification or expertise to edit any name in your phone to say anything that you want. So I would say there's zero foundational weight to the pictures of those text messages anyway. And of course, nothing to indicate that Pena or Brooks would have testified any differently than what they did. So, and we have no, and like I said, if there is an unreasonable assistance claim, I think it would be pretty clear cut in a successive post-conviction petition if there's an affidavit from post-conviction counsel saying, hey, it's my mistake. We filed it a day late and it's my mistake. But on this record, there simply isn't anything to overcome the burden, which again is higher than Strickland. Defendant still has the burden of establishing unreasonable assistance. There's nothing to overcome that burden here. More specifically, counsel, if we go back for a minute to the Brady claim and counsel's argument that post-conviction counsel was unreasonable for failing to amend the petition to develop this Brady claim. Tell me again, tell us again why this wasn't unreasonable assistance. We don't know why the, maybe there was no more to supplement. Maybe. Does the why matter? Does the why matter? Well, yes, if we're talking about unreasonable assistance, there has to be some kind of defective performance, objectively unreasonable performance by counsel. And we know from his, from argument that he did at least talk to Pena, but he doesn't, he's, he's, he was kind of clinging to the, well, well, it'll all come to light at the third stage. That's simply, I mean, maybe he was posturing. We don't know why. Maybe Pena did not want to file an affidavit. Maybe Pena wouldn't have testified any different than what he did. Maybe Pena told him, hey, I was just lying to Michelle Boyd in these text messages, or maybe Pena said, I didn't even send those text messages. That's why I think the record needs to be developed more for this unreasonable assistance argument. We don't know why counsel, again, filed the petition late, and we don't know why counsel did not further supplement this Brady violation claim. Of course, we know, like I said, that the trial court didn't touch on the Brady violation claim substantively, but in the actual innocence part of its order, it does talk about how Michelle Boyd's affidavit and, and these pictures of these text messages were, of course, multiple levels of hearsay, and we don't know what Pena or Brooks would have testified to differently. So I would say, even if we go by Strickland, the outcome of the proceedings wouldn't have been different here because nothing in this record suggests that there, there was a Brady violation or anything like that. And again, I may be wrong, there may be a mountain of evidence or maybe some documentation that can come out in affidavits, but that would be for a motion for leave to file a successive post-conviction petition and that, and that petition itself, not, not in this, at this first stage or second stage dismissal here. As to the new claims at the second stage, Justice Zinoff, I believe you did write the direct appeal opinion in this case in the second district. The two claims that defendant sort of focuses on are the Rashke's expert testimony that was clearly raised and rejected on direct appeal. So it's barred by race judicata and the trial court correctly found that. Likewise, the ineffective assistance argument based on the Facebook picture was available to defendant on direct appeal and was sort of raised. It was just the defendant's argument was so bad on direct appeal that the second district found that plain error analysis wasn't even available. Defendant obviously shouldn't get another bite at the apple simply because the argument on direct appeal was too bad. And assuming this is some sort of modification of that argument, clearly it could have been raised on direct appeal and wasn't. Either way, it's either barred by procedural default or race judicata. Of course, I guess defendant could have raised ineffective assistance of direct appeal counsel in his petition. Defendant did not do so. So clearly there is no, there's no claim there. Look at counsel's response to Justice Stegman's question regarding Rashke's testimony. Counsel insists that this is the lack of foundation is a due process violation. How do you respond to that? Well, I again, it was raised and rejected on direct appeal. I think if this would be a due process, I think this is a due process violation. It kind of kind of goes against any kind of procedural default of of any of these post conviction claims. If you and although defense counsel is saying he's not relying on the affidavit of his expert, most of the substance of his argument as to why Rashke's expert testimony was in error came from that that affidavit itself. So I would say that clearly, if it's not barred by race judicata, it was barred by procedural default. And moving on to the actual innocence claim, the trial court correctly rejected that claim as well. The DNA evidence wasn't material or conclusive. It was new, I suppose, but the jury already knew the DNA wasn't defendants. If anything, this DNA evidence happening, being from a lab technician and testing helped strengthen the state's case, not the defendants, because defendant couldn't argue that, hey, some some other person was the trigger man on this. This DNA shows it now. This just confirms that the random DNA that was on the gun came from a lab technician. Boyd's affidavit obviously wasn't new evidence or really evidence at all. Boyd didn't personally observe anything relevant to this case. And as a trial court pointed out, there's not no indication that Pena or Brooks would have testified to these facts any differently than they did. So this wasn't material or and it clearly wasn't conclusive. And Sanchez's affidavit, he was well known to defend that he was a friend at the time of trial. So his testimony could have been obtained then. So it's not newly discovered. And none of these are conclusive due to the overwhelming evidence of defendant's guilt. Just briefly, there was evidence from Cheyenne Patton that defendant was in the car, got out of the car. She heard gunshots. Defendant comes back saying he shot the victim in the face holding the murder weapon. There was evidence of Google searches to a phone that was connected to defendant, searching for the victim before it was publicly known even who the victim was and searching for how to remove gun residue from your person. And finally, there was Pena's testimony, even assuming these these chat messages to to Michelle Boyd were truthful. He doesn't say he lied. He only says that Brooks lied. And as Justice Zinoff pointed out, I think in the direct appeal, much more credibility and much more weight was put on Pena's testimony than Brooks's due to the fact that Pena knew defendant and was in the same gang. So it made more sense for him to confide in defendant as to this murder. So this is, I would say, multiple smoking guns pointing to defendant. There was overwhelming evidence and none of this had anything to do with any of the parts of the contested evidence of this appeal or and nothing to do with the so-called newly discovered evidence. Excuse me. In opposing counsel's brief, he does argue that post-conviction counsel was also unreasonable in failing to allege that trial counsel was ineffective for failing to call Malik Sanchez as a witness. How do you respond to that? Again, we don't know what Malik Sanchez's testimony would have been. He makes an affidavit to this, but it clearly wouldn't have changed the outcome of the proceedings for somebody who was at a party, which presumably there were dozens of people there. Simply because someone does not see defendant at the party, that wouldn't have changed the outcome of the trial, especially given the overwhelming evidence. Right. And in the affidavit, I believe it's averred that the police never talked to him about whether the defendant was at the party the night of the shooting. But there isn't anything in that affidavit about whether or not Sanchez spoke with the attorney, the trial attorney, is there? That's another reason. So there wouldn't even be objectively unreasonable performance. So I would say both prongs of Strickland would fail had that issue been properly preserved. And if the panel has no more questions, I thank the court. All right. I don't see any other questions. Thank you, Mr. McNeil. Mr. Barney, rebuttal argument. Thank you, Your Honor. I'd just like to address a couple of points here. First off, I do not believe Cato precludes the framework that Mr. Perez has put forward with respect to analyzing reasonable assistance of counsel claim for counsel who has retained in the first stage of proceedings. Cato serves to extend the protections of Rule 651 to retained counsel. But that doesn't necessarily mean that a similar analysis shouldn't apply regarding an unreasonable assistance claim in this particular case. A similar analysis to what? And I apologize if I'm repeating myself so that I understand what you're asking this court to do or what you think this court should do. Sure, Your Honor. A similar analysis as to the analysis that would be done at the second stage under Rule 651, meaning there's no reversal without respect to prejudice. So we assess prejudice. We assess those factors, but then add prejudice. Is that what you're saying? Your Honor, Mr. Perez is asking the court to not assess prejudice. Not assess? Correct. How is that different than the 651C analysis counsel? Well, maybe it's not that different, but I don't believe that that necessarily means that it shouldn't apply. That's not what Cato stands for. And I think with the Johnson case, making a statement that it wants to place all petitioners on the same footing, that it's appropriate to engage in that type of analysis. And this goes to something that counsel brought up in his response, that what we're asking for is a lower burden for unreasonable assistance claims when it should really be a higher burden. I disagree, and this is where I disagree with the Zareski opinion as well. Ineffective assistance of counsel is a constitutional claim with a remedy that is a very serious remedy, namely a new trial for the defendant. The burden is rightly high. Prejudice shouldn't be required because there's considerations of finality of convictions and judicial economy that are strongly at play when looking at an ineffective assistance of counsel claim. When looking at an unreasonable assistance of counsel claim, the remedy is not a new trial. It's just the petition goes back so that new counsel can attempt to address the infirmities that were not addressed by first counsel and hopefully have the petition heard on the merits. And there's a trajectory in the case law for having petitions and claims heard on the merits. So I think the lower burden is appropriate because the claim, the stakes are lower for an unreasonable assistance of counsel claim. So the burden is appropriately lower as well. In addition, I think it's important to consider that it's not just that Mr. Perez's claims that were in the petition could be lost for all time, potentially. But also any petitions that could or should have been brought in this petition by counsel who we know gave deficient performance, any claims that could or should have been brought in this petition also could be lost forever because of doctrines of waiver and res judicata. So allowing counsel's errors to result in the loss of nearly all of Mr. Perez's post-conviction claims, potentially forever, I think is not a warranted, it's not warranted. What Mr. Perez is asking for here is not a new trial, so that the petition can go back and be amended or supplemented. A couple of other points that counsel brought up, counsel argued that we don't know why it was late, maybe the petitioner wasn't diligent. The record belies that. And that's because counsel specifically said why it was late. In fact, he didn't concede it was late, he said it was timely. He argued that it was due nine months from the date that Mr. Perez's PLA was denied. That is not correct. So we know why it was one day late. It was one day late because that's nine months from when Mr. Perez's PLA was denied. In addition, if you look at the record, these affidavits are all obtained prior to the actual due date in this case. So the petition was being pursued by a retained counsel. And in fact, retained counsel for the post-conviction petition was the same counsel who represented Mr. Perez on the appeal. So I think the record suggests that Mr. Perez did diligently pursue his rights. He did everything he could. His counsel made an error and it was a grave error because it resulted in the loss of all of his claims. And maybe not just all of his claims in this petition, but any claim that could or should have been, should have been raised. There was some discussion by opposing counsel regarding whether there were certain claims. Oh, your honors, I ran out of time. Thank you for your honor's time. Respectfully, Mr. Perez would ask that the court reverse the trial court's order to dismiss this petition and amend this case. Thank you. All right. Thank you, counsel. Thank you both. The case will be taken under advisement and a written decision will be issued.